No. 12-35946

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————————————————

SETH BAKER, JESSE BERNSTEIN, MATTHEW DANZIG, JAMES JARRETT,
NATHAN MARLOW, and MARK RISK,
individually and on behalf of all others similarly situated,

Plaintiffs-Appellants,

v.

MICROSOFT CORPORATION, a Washington Corporation,

Defendant-Appellee.

———————————————————————

The United States District Court for the Western District of Washington
No. 2:11-cv-00722-RSM
The Honorable Ricardo S. Martinez, District Judge

———————————————————————

**BRIEF OF PLAINTIFFS-APPELLANTS**

———————————————————————

Amy Williams-Derry
Mark A. Griffin
Benjamin Gould
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington  98101-3052
Telephone: (206) 623-1900
Facsimile No.: (206) 623-3384

## TABLE OF CONTENTS

INTRODUCTION ................................................................... 1

STATEMENT OF JURISDICTION ................................................ 3

    I.    The District Court Had Original Jurisdiction...................................... 3

    II.   This Court Has Appellate Jurisdiction................................................ 3

    III.  The Appeal Is Timely. ...................................................... 7

ISSUES PRESENTED.............................................................. 7

STATEMENT OF THE CASE .................................................... 8

STATEMENT OF FACTS ......................................................... 9

    I.    The Xbox's Inherent Design Defect................................... 9

    II.   The Pre-*Wolin* District Court Decision ............................11

    III.  The Intervening *Wolin* Decision.......................................12

    IV.  The Present Action, and the Order Striking Baker's Class Allegations...................................................................13

SUMMARY OF THE ARGUMENT ..................................................14

ARGUMENT...........................................................................17

    I.    Standard of Review........................................................17

    II.   Because *Wolin* Controls Here, the District Court in This Case Erred by Concluding That the Earlier District Court Decision Was Owed Any Comity. ..................................................17

    III.  The District Court in This Case Erred in Treating the Earlier District Court Decision as Binding....................................22

IV.    Xbox Owners Have Standing to Assert Claims Against Microsoft for Breach of Warranty. ....................................................24

      A.    A Consumer Deprived of the Benefit of the Bargain Has Suffered an Injury in Fact. .....................................................24

      B.    A Consumer Who Stands at Risk of Future Harm Has Suffered an Injury in Fact. .....................................................26

      C.    This Court Should Reject Microsoft's Efforts to Paint Xbox Owners' Injuries as Remote or Hypothetical. ................28

CONCLUSION ...............................................................................30

STATEMENT OF RELATED CASES ...............................................30

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Asvesta v. Petroutsas*,
   580 F.3d 1000 (9th Cir. 2009).........................................................22

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009)...........................................................30

*Butler v. Sears, Roebuck & Co.*,
   702 F.3d 359 (7th Cir. 2012)............................................27, 28, 29

*Concha v. London*,
   62 F.3d 1493 (9th Cir. 1995)....................................................3, 4, 6

*Hart v. Massanari*,
   266 F.3d 1155 (9th Cir. 2001).........................................................22

*John's Insulation, Inc. v. L. Addison & Assocs., Inc.*,
   156 F.3d 101 (1st Cir. 1998) ............................................................ 4

*Krottner v. Starbucks Corp.*,
   628 F.3d 1139 (9th Cir. 2010)....................................................26, 27

*Lewis v. Tel. Emps. Credit Union*,
   87 F.3d 1537 (9th Cir. 1996)...................................................4, 5, 6

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).........................................................................24

*Lyon v. Chase Bank USA, N.A.*,
   656 F.3d 877 (9th Cir. 2011)...........................................................18

*Lyons v. Coxcom, Inc.*,
   718 F. Supp. 2d 1232 (S.D. Cal. 2009) .....................................17, 29

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011).........................................................30

*McManus v. Fleetwood Enterprises, Inc.*,
   320 F.3d 545 (5th Cir. 2003)......................................................................25, 26

*Omstead v. Dell, Inc.*,
   594 F.3d 1081 (9th Cir. 2010)...........................................................................4, 6

*Or. Bureau of Labor & Indus. ex rel. Richardson v. U.S. W. Commc'ns, Inc.*,
   288 F.3d 414 (9th Cir. 2002)............................................................................4, 6

*Oregon v. Witcosky (In re Allen Care Ctrs., Inc.)*,
   96 F.3d 1328 (9th Cir. 1996)...............................................................................23

*Reiter v. Sonotone Corp.*,
   442 U.S. 330 (1979)............................................................................................26

*San Diego Cnty. Gun Rights Comm. v. Reno*,
   98 F.3d 1121 (9th Cir. 1996)........................................................................24, 26

*Smentek v. Dart*,
   683 F.3d 373 (7th Cir. 2012)..................................................................16, 23, 24

*Smith v. Bayer Corp.*,
   131 S. Ct. 2368 (2011).........................................................................16, 22, 23

*Stearns v. Select Comfort Retail Corp.*,
   763 F. Supp. 2d 1128 (N.D. Cal. 2010)..............................................................29

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011).............................................................................24

*Wolin v. Jaguar Land Rover North America, LLC*,
   617 F.3d 1168 (9th Cir. 2010)......................................................................passim

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
   594 F.3d 1087 (9th Cir. 2010).............................................................................17

iv

## Statutes

2 U.C.C. § 2-714(2) ..........................................................................25

28 U.S.C. § 1291..................................................................3, 5, 6

28 U.S.C. § 1292(b) ...............................................................5, 6

28 U.S.C. § 1332(d)(2) ............................................................. 3

## Rules

Fed. R. App. P. 4(a)(1)(A) ........................................................ 7

Fed. R. App. P. 4(a)(7)(B) ........................................................ 7

Fed. R. Civ. P. 15(a)(1)............................................................. 8

Fed. R. Civ. P. 23....................................................................17

Fed. R. Civ. P. 23(a) ...............................................................20

Fed. R. Civ. P. 23(b)(3)....................................................passim

Fed. R. Civ. P. 23(f).................................................5, 6, 8, 12

Fed. R. Civ. P. 41(a) ................................................................ 7

Fed. R. Civ. P. 41(a)(1)............................................................ 8

Fed. R. Civ. P. 58.................................................................... 7

## Other Authorities

5C Charles Alan Wright et al., *Federal Practice and Procedure* § 1380 (3d ed. 2013) ....................................................................................29

**INTRODUCTION**

Plaintiffs Seth Baker, Jesse Bernstein, Matthew Danzig, James Jarrett, Nathan Marlow, and Mark Risk (collectively, "Baker"), allege that the Microsoft Xbox, a video game console, contains a defectively designed optical disc drive. Every Xbox sold contains this defect. Due to this defect, the Xbox's optical disc drive will scratch the discs that it is playing even when consumers use the Xbox normally. Baker, alleging that the design defect breaches Xbox warranties, seeks to represent a class of Xbox owners against Microsoft Corporation, the Xbox's manufacturer. In the complaint, Baker asserts that class certification was proper under Federal Rule of Civil Procedure 23(b)(3).

On Microsoft's motion, the district court struck Baker's class allegations from the complaint. It reasoned that even if all Xboxes contained the same design defect, individual issues of causation predominated over common issues, thus preventing class certification under Rule 23(b)(3). According to the district court, even if all Xbox consoles had the same design defect, individual factors "unrelated to the alleged defect" might have caused an individual class member's disc to be scratched. ER 14.

In *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168 (9th Cir. 2010), however, this Court rejected this very argument. A class of Land Rover

1

owners alleged a defect in the vehicles' tire alignment, which could cause premature tire wear. Land Rover argued that certification would be improper because individual factors other than the design defect could also cause tire wear. The Court held that individual issues did not predominate over common issues, because "[a]lthough individual factors may affect premature tire wear, they do not affect whether the vehicles were sold with an alignment defect." *Id.* at 1173.

Here, even if individual factors affected whether a plaintiff's disc was scratched, they did not affect whether Xboxes were sold with a defectively designed optical disc drive. Under *Wolin*, therefore, the district court erred by striking Baker's class allegations. For this reason alone, the district court should be reversed.

Rather than following this Court's decision in *Wolin*, the district court treated another district court's pre-*Wolin* denial of certification in a similar case as binding precedent that only "the Ninth Circuit" could "effectively overrule." ER 14. This is contrary to the principle that district court decisions have no precedential effect, and also calls for reversal.

## STATEMENT OF JURISDICTION

### I.     The District Court Had Original Jurisdiction.

The amended complaint proposed a nationwide class of Xbox console owners and named Microsoft, which is incorporated and has its principal place of business in Washington, as the sole Defendant. ER 529, ¶¶ 9, 11. Because the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a proposed class action, the district court had original jurisdiction under 28 U.S.C. § 1332(d)(2).

### II.    This Court Has Appellate Jurisdiction.

This Court has appellate jurisdiction under 28 U.S.C. § 1291 when a case is voluntarily dismissed with prejudice and the dismissal is not made in accordance with a settlement agreement. Here, after a motion to strike class allegations was granted, Baker, without settling his claims, voluntarily dismissed the case with prejudice. ER 1–4. Hence, this Court has appellate jurisdiction.

The law is "clear that plaintiffs may appeal from a voluntary dismissal with prejudice, at least where the plaintiff is not acting pursuant to a settlement agreement intended to terminate the litigation." *Concha v. London*, 62 F.3d 1493, 1507 (9th Cir. 1995). In other words, a "plaintiff that deems an interlocutory ruling to be so prejudicial as to deserve immediate review . . . has the alternative of

dismissing the complaint voluntarily [with prejudice]." *Omstead v. Dell, Inc.*, 594 F.3d 1081, 1085 (9th Cir. 2010) (quoting *John's Insulation, Inc. v. L. Addison & Assocs., Inc.*, 156 F.3d 101, 107 (1st Cir. 1998)). The Court has affirmed this principle on numerous occasions and in diverse contexts. It has allowed plaintiffs to dismiss an action voluntarily with prejudice to seek review of an order denying remand to state court, *Or. Bureau of Labor & Indus. ex rel. Richardson v. U.S. W. Commc'ns, Inc.*, 288 F.3d 414, 417 (9th Cir. 2002); *Concha*, 62 F.3d at 1509, an order compelling arbitration, *Omstead*, 594 F.3d at 1085, and an order excluding a witness, *Lewis v. Tel. Emps. Credit Union*, 87 F.3d 1537, 1556 (9th Cir. 1996).

Microsoft has argued that a voluntary dismissal with prejudice creates appellate jurisdiction only when the interlocutory order "essentially ends the plaintiffs' substantive claims"—for example, by ruling that the plaintiffs' claims are federally preempted. Microsoft's Mot. to Dismiss Appeal ("Mot. to Dismiss Appeal") at 12, Dec. 26, 2012, ECF No. 4. This argument lacks merit. Nothing in the reasoning or language of any of this Court's precedents suggests that Microsoft's proposed limitation on appealability is correct, and indeed, two of the precedents actually disprove it. The arbitration order challenged in *Omstead* did not end the plaintiffs' claims—it merely required them to litigate those claims in another forum. In *Lewis*, there was no suggestion that the district court's exclusion

of a witness—the interlocutory order that the plaintiff was challenging—inevitably doomed the plaintiffs' claims. This Court observed that the exclusion "would likely have seriously weakened the plaintiffs' case," *Lewis*, 87 F.3d at 1559, but to "likely" weaken a case is not to "essentially end[]" it. Mot. to Dismiss Appeal at 12. Most importantly, this observation played no part in the Court's jurisdictional analysis, thus indicating that Microsoft's proposed limitation on appealability is entirely its own creation. *See Lewis*, 87 F.3d at 1556.

Microsoft has also argued that the availability of a permissive appeal under Federal Rule of Civil Procedure 23(f) means that the district court's striking of Baker's class allegations is not appealable under 28 U.S.C. § 1291. Mot. to Dismiss Appeal at 7–8. Microsoft's argument, however, has a faulty premise. It incorrectly assumes that Baker is appealing directly from the district court's order striking class allegations. This Court has appellate jurisdiction not because the district court struck the class allegations, but because Baker voluntarily moved for dismissal with prejudice and the district court granted that motion. Rule 23(f) thus has no bearing on this appeal. Even if Microsoft's faulty premise is accepted, though, its reliance on Rule 23(f) does not help it. 28 U.S.C. § 1292(b) is a provision like Rule 23(f), but much broader: it allows a permissive appeal from *any* kind of interlocutory order. Under Microsoft's theory, the availability of an

5

appeal under 28 U.S.C. § 1292(b) means that this Court's decisions in *Concha*, *Omstead*, *Lewis*, and *Oregon Bureau of Labor & Industries*, which all reviewed interlocutory decisions that could have been appealed under 28 U.S.C. § 1292(b), were wrongly decided, because the availability of that permissive appeal removed jurisdiction from 28 U.S.C. § 1291. Those cases, however, are still good law, and they show that the availability of a permissive interlocutory appeal does not eliminate the availability of a final appeal once a plaintiff voluntarily dismisses the case with prejudice.

Microsoft more recently has shifted its position. It now maintains that even if the mere availability of a permissive appeal under Rule 23(f) does not eliminate jurisdiction, the fact that Baker sought and was denied review under Rule 23(f) precludes jurisdiction. Microsoft's Reply in Supp. of Mot. to Dismiss Appeal at 13, Feb. 15, 2013, ECF No. 8-1. Microsoft points to no case that has adopted that theory. Nor does it explain how its new theory is consistent with the plain language of 28 U.S.C. § 1291—how the mere pursuit of Rule 23(f) review of an interlocutory decision (here, the striking of class allegations) can remove the "final[ity]" from a different, and otherwise final, decision (here, the dismissal of the action with prejudice). 28 U.S.C. § 1291. This Court has appellate jurisdiction.

**III.    The Appeal Is Timely.**

On October 16, 2012, the district court entered an order granting Baker's motion to dismiss the case with prejudice under Federal Rule of Civil Procedure 41(a). ER 4. On November 15, 2012, Baker filed a notice of appeal from that order and from all decisions subsumed in that order. ER 16. While the district court appears not to have entered a separate judgment as required by Federal Rule of Civil Procedure 58, the notice of appeal—and hence this appeal—was timely filed. *See* Fed. R. App. P. 4(a)(1)(A), (a)(7)(B).

## ISSUES PRESENTED

1.    After Microsoft's motion to strike Baker's class allegations was granted, Baker, without settling his claims, voluntarily moved to dismiss the action with prejudice under Federal Rule of Civil Procedure 41(a). The motion was granted, and a timely notice of appeal was filed. Does the Court have jurisdiction over this appeal?

2.    Relying on reasoning that was later overturned by *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168 (9th Cir. 2010), another district court declined to certify an earlier proposed class action seeking relief for the same Xbox design defect that Baker complains of here. The district court in this action

7

deferred to that earlier denial of class certification, ruling that the denial was consistent with *Wolin*. In so ruling, did the district court in this action err?

3.      In ruling that "principles of comity" required it to treat the earlier denial of class certification as binding precedent, did the district court in this action err?

4.      The Xbox's design defect appears in every model sold and is virtually guaranteed to scratch game discs—and render them unplayable—when the Xbox console is used within normal specifications. Does an owner of an Xbox console have Article III standing to seek redress for the design defect?

## STATEMENT OF THE CASE

Baker filed this proposed class action in federal district court, and then amended the complaint as a matter of right. *See* Fed. R. Civ. P. 15(a)(1). Thereafter, Microsoft filed a "Motion to Strike Plaintiffs' Allegations, or, in the Alternative, Deny Certification of Plaintiffs' Proposed Classes." ER 22–52. After briefing, the district court entered an order striking Baker's class allegations. ER 5–15. Baker, in accordance with Rule 23(f), filed a timely petition for permission to appeal, which was denied.

Baker then moved to voluntarily dismiss the case under Rule 41(a)(1). ER 19. A short time later, the parties filed a stipulation and proposed order

granting Baker's motion to voluntarily dismiss the case. ER 1–2. The Court

entered the proposed order, and Baker filed a timely notice of appeal from the

order of dismissal and all decisions subsumed therein. ER 4, 16. Microsoft moved

this Court to dismiss the appeal, and the motion was denied without prejudice.

## STATEMENT OF FACTS

### I.    The Xbox's Inherent Design Defect

The Microsoft Xbox 360 is a video game console. ER 534, ¶ 16. To play

a video game on the Xbox, the user inserts a game disc into the console's optical

disc drive. ER 528, 535, ¶¶ 1, 17. The Xbox's optical disc drive spins the disc,

"reads" the game disc's data, and allows the user to play the video game whose

data is stored on the disc. *See* ER 535–36, ¶¶ 17, 23, 24, 26.

Optical disc drives are not just found in the Xbox—they are also found in

cars, notebook computers, portable DVD players, and camcorders. ER 536, ¶ 25.

Engineers in the electronics industry have long anticipated that optical disc drives

will routinely be subjected to tilting and movement while they are operating.

ER 536, ¶ 26. They have learned to provide simple, inexpensive, and obvious

measures to protect optical discs as they are spinning in the disc drive. *Id.* So there

is a reasonable consumer expectation that everyday household products with

9

optical disc drives will not scratch discs—even when the products are tilted, vibrated, or slightly rotated in the course of normal use. *Id.*

Despite this expectation, the Xbox's optical disc drive cannot withstand even small unintentional movements—caused by vibrations or other sources of indirect force—that are well within normal expected use. ER 537, ¶ 27. These movements cause a disc in the Xbox's optical disc drive to become decoupled from the spindle that rotates it. ER 536, ¶ 24. As a result, the disc collides with internal components of the optical disc drive and is scratched. ER 536, ¶¶ 23–24. These scratches always take a telltale pattern: they are concentric and form a groove along the disc's underside, which then prevents the disc's data from being recognized by the optical disc drive. ER 536, ¶ 23. Although a sticker on the Xbox reads, "Do not move console with disc in tray," ER 509, Microsoft never tells consumers that minute, *unintentional* movements well within normal use will scratch discs and render them unreadable. ER 537, ¶¶ 28–29.

Although Microsoft has publicly denied that its Xbox has a design defect that scratches discs and has refused to recall its consoles, ER 537, ¶¶ 30–31, it did begin a "disc replacement program" in 2007. ER 538, ¶ 33. Under this program, Microsoft would replace damaged game discs in exchange for a fee of $20. ER 539, ¶ 34. The actual cost of pressing and shipping a replacement game disc is

10

well under one dollar. ER 539, ¶ 35. The replacement program applies only to games published by Microsoft, so it provides no relief to the Xbox owner with a scratched game disc published by one of the many other publishers of Xbox games. ER 538–39, ¶¶ 33, 36.

## II.    The Pre-*Wolin* District Court Decision

The Xbox's design defect was the subject of earlier litigation in the U.S. District Court for the Western District of Washington. The plaintiffs asserting claims for breach of warranty and violation of consumer protection laws, moved for class certification under Rule 23(b)(3).

The court presiding over the litigation denied the motion. It concluded that the plaintiffs did not satisfy Rule 23(b)(3)'s "predominance" requirement—the requirement that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Relying on a recent district court decision involving allegedly defective tire alignment in Land Rovers, the district court ruled that although every Xbox may suffer from a design defect, individual issues of damages and causation predominated. These individual issues predominated, concluded the district court, because the design defect had not "manifested" itself—i.e., had not scratched

11

discs—in most of the Xbox consoles. ER 228 (emphasis omitted). After permission to appeal under Rule 23(f) was denied, the plaintiffs settled their individual claims.

## III.   The Intervening *Wolin* Decision

Meanwhile, the plaintiffs in the Land Rover tire-alignment litigation had appealed to this Court. In *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168 (9th Cir. 2010), a decision issued in August 2010, this Court reversed the district court's denial of class certification under Rule 23(b)(3).

The Land Rover plaintiffs asserted warranty claims based on a defect in the vehicles' alignment. Because the tire alignment defect had not "manifested in a majority of the class's vehicles" in the form of premature tire wear, the district court ruled that common issues of fact did not predominate over individual ones, as required by Rule 23(b)(3). *Wolin*, 617 F.3d at 1173. This Court rejected that ruling. This Court noted that the plaintiffs had alleged the existence of a "common defect"—an alignment defect that existed in every class member's vehicle. *Id.* The "existence of the defect" itself was thus distinct from whether and how the defect had manifested itself in individual vehicles, and was "susceptible to proof by generalized evidence." *Id.* Common issues therefore predominated over individual ones, making Rule 23(b)(3) certification appropriate. The district court's contrary conclusion was reversed.

## IV. The Present Action, and the Order Striking Baker's Class Allegations

Baker initiated the present action in April 2011, relying on *Wolin*, which he believed had rejected the district court's reasons for denying class certification in the earlier Xbox litigation. Baker alleges that the Xbox's design defect, which is present in all consoles sold, causes game discs to be scratched even when the Xbox is being used normally. ER 535–37, ¶¶ 17, 23–24, 27. Every one of the six named Plaintiffs have had their game discs scratched by the Xbox and rendered unplayable through no fault of their own. ER 540–43, ¶¶ 39, 41, 44, 48–49, 53, 57. In fact, one of the named Plaintiffs, James Jarrett, bought an Xbox that scratched three of his game discs. ER 541, ¶ 47. Thinking that the defect was unique to his console, he bought a new Xbox—but the new machine scratched five more of Jarrett's game discs, leaving them unplayable. ER 541–42, ¶¶ 49–51.

Baker asserts that the Xbox's design defect breaches uniform express and implied warranties, and that these breaches also violate the Magnuson-Moss Warranty Act. ER 543–50, ¶¶ 61–97. These warranty-based claims are asserted on behalf of a Nationwide Console Class, defined as "all persons in the United States who own Microsoft Xbox 360 gaming consoles." ER 527, ¶ 12(a).[1]

---

[1] In the district court, Baker asserted non-warranty claims on behalf of classes other than the Nationwide Console Class. These claims and classes are not at issue in this appeal.

Baker sought class certification under Rule 23(b)(3), which allows for certification if "questions of law or fact common to class members predominate over" individual questions, and if a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). *See* ER 530, 532–34, ¶¶ 12, 15(c), (f).

The district court granted Microsoft's motion to strike the class allegations. It thought that it was required to defer to the earlier denial of certification unless the governing law had changed in the meantime. ER 11. And in the district court's view, *Wolin* had not undermined the earlier denial, which—according to the district court—had not made manifestation of a defect a "prerequisite" to class certification. ER 14. Instead, the earlier decision had simply concluded that "individual issues of causation" justified the denial of certification. *Id*. (emphasis omitted). The district court in this case did not identify what those individual issues of causation were.

## SUMMARY OF THE ARGUMENT

This Court's published opinions bind district courts within the Ninth Circuit. By contrast, one district court's orders do not bind another district court deciding the same legal issue. Here, however, the district court reversed these rules: it

treated an earlier district court order as binding, but failed to follow an indistinguishable precedent of this Court.

Baker seeks class certification under Rule 23(b)(3), which provides that class treatment is appropriate when "questions of law or fact common to class members predominate" over individual questions. Fed. R. Civ. P. 23(b)(3). The district court struck Baker's class allegations from the complaint, ruling as a matter of law that Baker could not meet Rule 23(b)(3)'s requirement that common questions predominate over individual ones.

In striking the class allegations, the district court contravened this Court's decision in *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168 (9th Cir. 2010). In *Wolin*, the automobile owners alleged that their vehicles had the same limited warranty, and that all the vehicles had the same inherent design defect that breached that limited warranty. This Court held that this claim "require[d] common proof of the existence of the defect and a determination whether Land Rover violated the terms of its Limited Warranty." *Id.* at 1174. Thus "common issues predominate[d]," making certification under Rule 23(b)(3) appropriate. *Id.*

As did the plaintiffs in *Wolin*, Baker alleges here that all Xboxes are covered by the same express and implied warranties, and that all Xboxes have the same

15

inherent design defect that breaches those warranties. *Wolin*, then, supports class certification under Rule 23(b)(3). Because *Wolin* binds all district courts within the Ninth Circuit, the district court erred by striking Baker's class allegations.

But even if *Wolin* did not control here, the district court still erred. The district court looked to another district court's earlier denial of class certification in a similar case, treating that earlier decision as binding precedent. According to the district court, this treatment was required by the Supreme Court's decision in *Smith v. Bayer Corp.*, where the Court said it expected that federal courts would "apply principles of comity to each other's class certification decisions when addressing a common dispute." *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2382 (2011). Comity, however, required only that the district court pay respectful attention to the earlier denial of certification. Comity does not mean that earlier class certification decisions are "super-precedents that no court lacking appellate authority [can] question." *Smentek v. Dart*, 683 F.3d 373, 377 (7th Cir. 2012). By treating the earlier denial of certification as binding, the district court erred as a matter of law.

Finally, Baker and the rest of the proposed class have standing to pursue their claims. The Xbox's design defect lessens the machine's value; consumers are not getting what they paid for. This is economic loss, which is sufficient to confer standing under Article III of the Constitution. In addition, the Xbox owners have

standing because the Xbox's faulty design puts them at increased risk of having their game discs scratched.

## ARGUMENT

### I. Standard of Review

Without answering the complaint or engaging in discovery, Microsoft moved to strike the complaint's class allegations. ER 22–52. Thus, the Court's review is necessarily limited to the face of the pleadings and judicially noticeable facts. *See Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1236 (S.D. Cal. 2009).

While district court orders applying Rule 23 are reviewed for abuse of discretion, "it is also true that [the Court] accord[s] the decisions of district courts no deference when reviewing their determinations of questions of law." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1091 (9th Cir. 2010). Put differently, an error of law is a "per se abuse of discretion." *Id.*

### II. Because *Wolin* Controls Here, the District Court in This Case Erred by Concluding That the Earlier District Court Decision Was Owed Any Comity.

The district court treated the earlier district court decision denying class certification as having binding precedential force—as something only "the Ninth Circuit" could "effectively overrule." ER 14. The district court thought that "principles of comity" required it to defer to the earlier certification decision as

long as that decision was consistent with intervening developments in the law. ER 11. Even though *Wolin* had intervened between the first certification decision and the second, the district court concluded that the earlier decision was consistent with *Wolin*. ER 13–14. Assuming for the moment that the district court's understanding of comity was correct—which it was not, *see infra* pp. 22–24—the district court erred in its understanding and application of *Wolin*. A straightforward comparison of this case with *Wolin* demonstrates the district court's error.[2]

Here, all Xboxes are covered by the same express and implied warranties. ER 543–47, 549, ¶¶ 62, 73–75, 92. All Xboxes have the same defect inherent in the design of their optical disc drives. ER 535, 537, ¶¶ 17, 27. Baker alleges that the existence of this design defect breaches the Xbox's express and implied warranties. ER 544, 546–47, 549, ¶¶ 66, 74, 79–80, 92. While only some owners of Xboxes have suffered scratched game discs as a result of the design defect, every console suffers from the same design defect—which means that every Xbox breaches its warranties in the same way. In other words, Baker's warranty claims do not require proof that most Xboxes have scratched game discs—they simply require proof that the design defect present in all Xboxes is capable of scratching discs under

---

[2] Whether the district court in this case properly interpreted *Wolin* is a pure question of law reviewed de novo. *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011).

conditions of normal use. To put it differently, Baker's warranty claims turn on the mere existence of a uniform design defect, and not whether the design defect in a particular console has yet manifested itself by scratching a disc.

These facts make this case indistinguishable from the limited-warranty claim in *Wolin*. There, the plaintiffs alleged that all Land Rover LR3s sold in Michigan and Florida in certain years had a defectively designed tire alignment that could cause premature tire wear. *Wolin*, 617 F.3d at 1171. The vehicles all had the same limited warranty, which, according to the plaintiffs, the Land Rovers' uniform defect breached. *See id.* at 1174. This Court held that even though the majority of Land Rovers had not manifested the defect by causing premature tire damage, common questions of fact and law still predominated, making certification of the limited-warranty claim appropriate under Rule 23(b)(3). That was because the limited-warranty claim simply "require[d] common proof of the existence of the defect and a determination whether Land Rover violated the terms of its Limited Warranty." *Id.* Here, as in *Wolin*, Baker alleges that all Xboxes have the same design defect. Here, as in *Wolin*, Baker alleges that all Xboxes have the same warranties, which the design defect breaches in a uniform fashion. Under *Wolin*, common questions of fact and law predominate, making certification of Baker's warranty claims appropriate under Rule 23(b)(3).

19

The district court, however, maintained that individual questions of causation prevented certification. Relying on the denial of class certification in an earlier action involving the Xbox, the district court said that "various factors unrelated to the alleged defect might have set in motion a chain of causes ending in disc scratching." ER 14 (quotation marks and citation omitted). "[O]ne link of that chain" might be a design defect, but "the other links are unique to each plaintiff." *Id.* (quotation marks, citation, and emphasis omitted). So, even assuming that "all Xbox 360 consoles contain an inherent defect," and that "a number of Xbox 360 consoles actually manifested that defect" by scratching discs, the earlier decision denying class treatment had "still concluded that individual issues of causation preclude class certification" under Rule 23(b)(3)'s predominance requirement—and *Wolin* did "nothing to undermine that conclusion." *Id.* (emphasis omitted).[3]

The district court, however, fell into the very error that *Wolin* rejects. The district court concluded that because hypothetical individual factors may have affected whether a particular game disc was scratched, the existence of the design

---

[3] In its request that the district court strike Baker's class allegations, Microsoft relied solely on Rule 23(b)(3)'s predominance requirement. Microsoft nowhere argued that the proposed class does not meet the prerequisites of Rule 23(a) or Rule 23(b)(3)'s requirement that a class action be "superior to other available methods for fairly and adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Likewise, the district court's order granting Microsoft's request relied solely on Rule 23(b)(3)'s predominance requirement.

defect was not susceptible to generalized proof. But when Land Rover argued that individual factors affected tire wear, the *Wolin* Court responded that "[a]lthough individual factors may affect premature tire wear, they do not affect whether the vehicles were sold with an alignment defect." *Wolin*, 617 F.3d at 1173. The same is true here. Even if individual factors affected how a particular game disc was scratched, they did not affect whether Xboxes were sold with an inherent defect in their optical disc drives. Just as in *Wolin*, the existence of that design defect is "susceptible to proof by generalized evidence." *Id.* The limits of normal intended Xbox use may be proven by generalized evidence such as reasonable consumer expectations or the Xbox's own engineering specifications. Generalized evidence—the laboratory testing that Microsoft itself conducted in the earlier litigation, for example—may also be used to prove that a game disc is likely to be scratched when subjected to forces that are within the limits of normal intended use. *See* ER 397–401.

Quite apart from its contravention of *Wolin*, the district court erred by prematurely finding that "various factors unrelated to the alleged defect might have set in motion a chain of causes ending in disc scratching," so that individual issues of causation predominated. ER 14 (quotation marks and citation omitted). The

existence, importance, and causal role of those putative individual factors all raise questions of fact that cannot be decided on the pleadings.

In sum, *Wolin* controls this case, and the district court's order cannot be squared with *Wolin*. Because district courts within the Ninth Circuit are bound to follow Ninth Circuit precedent, the district court's order striking Baker's class allegations was erroneous and should be reversed. *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001).

## III. The District Court in This Case Erred in Treating the Earlier District Court Decision as Binding.

Even if *Wolin* were not controlling here, the district court would still have to be reversed for treating the earlier class certification decision as binding. In *Smith v. Bayer Corp.*, 131 S. Ct. 2368 (2011), the Supreme Court held that denying class certification in one case did not have an issue-preclusive effect on a class member seeking certification in another case. At the same time, it expected that federal courts would "apply principles of comity to each other's class certification decisions when addressing a common dispute." *Id.* at 2382. Here, the district court thought these principles required it to treat the earlier district court denial of certification as something only "the Ninth Circuit" could "effectively overrule." ER 14. Whether the district court properly understood principles of comity is a question of law reviewed de novo. *See Asvesta v. Petroutsas*, 580 F.3d 1000, 1010

22

(9th Cir. 2009) (suggesting that in the context of comity, when a district court treats another court's adjudication as binding, the decision should be reviewed de novo); *Oregon v. Witcosky (In re Allen Care Ctrs., Inc.)*, 96 F.3d 1328, 1330 n.1 (9th Cir. 1996) (a district court's interpretation of Supreme Court precedents, such as *Smith*, is reviewed de novo).

 Another circuit has already addressed the meaning of comity in the class-action context. In *Smentek v. Dart*, 683 F.3d 373 (7th Cir. 2012), the Seventh Circuit rejected the notion that an earlier class certification decision was in any sense binding. The Seventh Circuit held that in *Smith v. Bayer Corp.* the Supreme Court had set forth a "weak notion of 'comity' as requiring a court to pay respectful attention to the decision of another judge in a materially identical case, but no more than that even if it is a judge of the same court or a judge of a different court within the same judiciary." *Smentek*, 683 F.3d at 377. And the Seventh Circuit specifically rejected the understanding of comity that the district court in this case adopted. The district court said that Baker was asking it "to step into the shoes of the Ninth Circuit and effectively overrule a fellow member of this court," something that it thought "well-settled principles of judicial comity" prevented it from doing. ER 13–14. The Seventh Circuit, however, made clear that because "a district court decision does not have precedential effect," earlier class

certification decisions could not be treated as "super-precedents that no court lacking appellate authority could question." *Smentek*, 683 F.3d at 377.

The district court fundamentally misunderstood the meaning of comity in the class-action context. Its decision striking Baker's class allegations should be reversed for this reason also.

## IV. Xbox Owners Have Standing to Assert Claims Against Microsoft for Breach of Warranty.

Constitutional standing requires that a plaintiff have a "concrete and particularized" injury in fact. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Baker—and the other members of the proposed class—easily meet this requirement. Because Xbox owners all received a defective product, they were deprived of the benefit of their bargain and suffered economic injury. "Economic injury is clearly a sufficient basis for standing." *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996). Standing is a question of law that is reviewed de novo. *Id.* at 1124.

### A. A Consumer Deprived of the Benefit of the Bargain Has Suffered an Injury in Fact.

A consumer is entitled to a product that conforms to its warranties. The Xbox's design defect breaches express and implied warranties. The Xbox

24

consumer is thus entitled to the benefit of the bargain, which is the "difference . . . between the value of the goods accepted and the value they would have had if they had been as warranted." 2 U.C.C. § 2-714(2). This measure of damages does not depend on whether the Xbox's design defect has caused extrinsic injury, such as injury to a game disc. It simply depends on the fact that Xbox consumers did not get what they paid for—which is an injury sufficient to confer standing.

There is nothing controversial about the principle that consumers have been injured when they have been deprived of the benefit of the bargain. In *McManus v. Fleetwood Enterprises, Inc.*, 320 F.3d 545 (5th Cir. 2003), for example, the defendant sold the plaintiff class a motor home that was supposed to be able to tow a car. It turned out that the motor home could only tow a car and stop safely if owners also purchased supplemental brakes. *Id.* at 547. The plaintiffs asserted that the motor home breached the implied warranty of merchantability. The defendant responded that the plaintiffs had made no showing of injury, since they had not shown that all class members had tried to tow a car, or that they or their property had been injured in the attempt. *Id.* at 552. The Fifth Circuit disagreed, noting that "physical injury" was "immaterial," as was whether individual "class members even intended to use their motor homes for towing." *Id.* (emphasis omitted). Rather, the injury was not receiving the benefit of the contractual bargain—i.e., the

difference between the "actual value of the motor home and the value as warranted." *Id.* at 552. So too here: for a customer whose game discs have not yet been scratched, the injury is the difference between the value of the defective Xbox and the value of the Xbox as warranted.

Fundamentally, buying a defective product counts as injury because losing money—economic loss—is enough to confer standing. *San Diego Cnty. Gun Rights*, 98 F.3d at 1130. Consumers have suffered injury when they have paid more than they otherwise would have. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 342 (1979) (construing section 4 of the Sherman Act, which gives standing to anyone who has been "injured in his business or property").

### B. A Consumer Who Stands at Risk of Future Harm Has Suffered an Injury in Fact.

Purchasers of the Xbox also have standing because the Xbox's design defect puts them at risk of suffering scratched game discs in the future. Increased risk of future injury is an injury sufficient to confer standing.

Once again, this is an uncontroversial proposition. In *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010), a laptop that contained Starbucks employees' unencrypted names, addresses, and social security names was stolen. Two employees sued on behalf of a proposed class of other affected employees, asserting claims for breach of implied contract and negligence. Neither of the two

26

named plaintiffs had suffered any financial loss, but this Court held that an increased risk of identity theft constitutes an injury sufficient to confer standing. *Id.* at 1143–44. Likewise, a design defect that puts a consumer at increased risk of a scratched game disc is an injury that confers standing.

Baker's standing due to increased risk of future harm is confirmed by a case that even more closely resembles this one. In *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359 (7th Cir. 2012), a class of consumers alleged that their washing machines had a defect that made them capable of producing mold, which created bad odors. The defendant argued that the class could not be certified because "most members of the plaintiff class did not experience a mold problem." *Id.* at 362. That was not a barrier, said the court, because if the defect "can precipitate a mold problem at any time, the defect is an expected harm, just as having symptomless high blood pressure creates harm in the form of an abnormally high risk of stroke." *Id.* Class members who had "not yet encountered odor" could still receive "relief for an expected rather than for only a realized harm from a product defect covered by an express or implied warranty." *Id.* The same is true here. Under a breach-of-warranty claim, Xbox owners who have not yet encountered a scratched disc can still receive relief for an expected rather than for only a realized harm.

27

**C.    This Court Should Reject Microsoft's Efforts to Paint Xbox Owners' Injuries as Remote or Hypothetical.**

Throughout this litigation, Microsoft has asserted that more than 99% of Xbox consoles have never scratched a game disc, and that, as a result, most members of the proposed class lack standing. ER 36. This argument misstates both the facts and the law and at any rate raises factual questions that cannot be decided on the pleadings.

To begin with, the 99% figure is seriously misleading. It is taken from the number of customers who took the time to call Microsoft to complain about a scratched game discs. *Id*. But not all customers who experience a problem with a product call the manufacturer. Some may contact their retailer instead. Others may be too busy or tired to complain at all. And many customers may feel that there is nothing they would enjoy less than calling a customer assistance hotline, possibly waiting on hold, and then talking to a harried representative who may or may not be pleasant and helpful. Measuring the number of scratched discs from the number of complaint calls is like measuring the number of fish in the sea from the number of fish that happen to wash up on one beach. Microsoft cannot rely on the number of complaint calls to minimize the Xbox's defect.

In addition, Microsoft cannot rely on the number of complaint calls because that "evidence" is outside the complaint and is not judicially noticeable. If

28

Microsoft wanted the number of complaint calls to be considered, it should have moved for summary judgment; it should not have moved to strike class allegations. *See Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1236 (S.D. Cal. 2009) (noting that a motion to strike class allegations can only be decided on "the face of the pleadings").

What *is* in the complaint is the allegation that all of the named Plaintiffs have experienced scratched game discs through no fault of their own. ER 540–43, ¶¶ 39, 41, 44, 48–49, 53, 57. One of the named Plaintiffs bought two Xbox consoles, *each* of which scratched multiple game discs. ER 541–42, ¶¶ 49–51. These allegations—which the Court must accept as true at this stage, *see, e.g.*, *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1140 (N.D. Cal. 2010); 5C Charles Alan Wright et al., *Federal Practice and Procedure* § 1380 (3d ed. 2013)—suggest that the risk of scratched discs is much higher than Microsoft claims.

But even if Microsoft's 99% figure were accurate, it would not mean that there is no injury and hence no standing. Whether the risk of a scratched disc is too small to constitute a design defect is a merits question. *See Butler*, 702 F.3d at 362 ("Sears argues that most members of the plaintiff class did not experience a mold problem. But if so that is an argument not for refusing to certify the class but for

29

certifying it and then entering a judgment that will largely exonerate Sears . . . .").
Merits questions are distinct from questions of standing. *See, e.g.*, *Maya v. Centex
Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) ("[T]he jurisdictional question of
standing precedes, and does not require, analysis of the merits." (quotation marks
and citation omitted)).

This is not a case in which injury is hypothetical or the fault of the
consumers. *Cf. Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009). Rather, the
complaint alleges that the Xbox's optical disc drive cannot withstand minute
unintentional movements without scratching a disc—movements it is reasonably
expected that all consumer devices will be able to withstand. ER 537, ¶¶ 27–29.
The scratches are caused by simple physics, and thus are as inevitable as the laws
of physics themselves.

## CONCLUSION

For the foregoing reasons, the district court's decision to strike Baker's class
allegations should reversed, and this case should be remanded for further
proceedings.

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Plaintiffs-Appellants represent
that they are not aware of any related case pending in this Court.

30

DATED this April 22, 2013.

KELLER ROHRBACK L.L.P.

By  */s/ Benjamin Gould*

    Amy Williams-Derry
    Mark A. Griffin
    Benjamin Gould
    KELLER ROHRBACK L.L.P.
    1201 Third Avenue, Suite 3200
    Seattle, WA 98101
    Telephone:  (206) 623-1900

KOPELOWITZ OSTROW FERGUSON
WEISELBERG KEECHL
    Jeffrey M. Ostrow
    200 S.W. 1st Avenue, 12th Floor
    Fort Lauderdale, FL 33301
    Telephone: (954) 525-4100

CHITWOOD HARLEY HARNES LLP
    Gregory E. Keller
    Darren T. Kaplan
    2300 Promenade II
    1230 Peachtree Street, N.E.
    Atlanta, Georgia 30309
    Telephone: (404) 873-3900

WASSERMAN COMDEN CASSELMAN
& ESENSTEN LLP
    Robert L. Esensten
    5567 Reseda Blvd, Suite 330
    Tarzana, California 91356
    Telephone: (818) 705-6800
    Facsimile: (818) 996-8266

STRITMATTER KESSLER WHELAN COLUCCIO
    Paul L. Stritmatter
    Kevin Coluccio
    Brad J. Moore
    200 Second Avenue West
    Seattle, Washington  98119
    Telephone: (206) 448-1777

***Attorneys for Plaintiffs***

## CERTIFICATE OF COMPLIANCE

I, Benjamin Gould, certify that:

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) & (C) because this brief contains 6,799 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii); and

2.      This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2003 in 14-point Times New Roman font;

Dated this April 22, 2013.


By  */s/ Benjamin Gould*
Benjamin Gould
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone:  (206) 623-1900

# CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system. I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by first-class U.S. Mail postage prepaid to the following non-CM/ECF participants:

Gregory Keller
Darren T. Kaplan
Chitwood Harley Harnes LLP
1203 Peachtree Street, NE
23011 Promenade II
Atlanta, GA 30309

Jeffrey M. Ostrow
Kopelowitz Ostrow Ferguson
Weiselberg Keechl
200 Southwest 1st Avenue, 12th Floor
Fort Lauderdale, FL 33301

Robert L. Esensten
WASSERMAN COMDEN
CASSELMAN & ESENSTEN LLP
5567 Reseda Blvd, Suite 330
Tarzana, California 91356

I hereby certify that two copies were served upon counsel of record via hand delivery to:

Stephen M. Rummage
Fred B. Burnside
John Goldmark
**DAVIS WRIGHT TREMAINE**
1201 Third Avenue Suite 2200
Seattle, WA 98101-3045

*s/  Cathy A. Hopkins*
Cathy A. Hopkins, Legal Assistant
KELLER ROHRBACK L.L.P.
1201 3rd Avenue, Suite 3200
Seattle, WA  98101
Tel:  (206) 623-1900